UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CASSANDRA WELCH, and individuals listed in Appendix A individually and on behalf of a class, and INDIANAPOLIS BRANCH, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, and the NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, <br>        Plaintiffs, <br>  vs. <br>ELI LILLY and COMPANY, <br>        Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:06-cv-0641-RLY-JMS |

## ENTRY ON DEFENDANT'S PARTIAL MOTION TO DISMISS

On August 7, 2008, the court dismissed the disparate impact claims of the First Amended Complaint brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). On September 8, 2008, the Plaintiffs filed a 136-page Second Amended Class Action Complaint ("Second Amended Complaint") naming 91 additional Plaintiffs, and adding more than 100 new allegations which pertain to Plaintiffs' disparate impact claims. Defendant now moves to dismiss Plaintiffs' Title VII class and individual disparate impact claims on three grounds: (1) for failing to exhaust administrative remedies; (2) for failing to provide sufficient allegations to give the Defendant fair notice of their claims for relief and for otherwise failing to state

1

a claim upon which relief can be granted; and (3) for including allegations which occurred more than 300 days before filing such charges with the EEOC. The court, having read and reviewed the Defendant, Eli Lilly and Company's ("Defendant" or "Lilly"), motion, the supporting and opposing briefs, and the applicable law, now finds Plaintiffs' Title VII disparate treatment claims must be dismissed because the Plaintiffs failed to include such claims in their EEOC charges of discrimination, and thus, failed to exhaust their administrative remedies, and failed to properly allege claims for disparate treatment in their Second Amended Complaint.

### A.     Failure to Exhaust

Generally, a plaintiff may not raise Title VII claims in a district court that were not included in the charge of discrimination filed with the EEOC unless the claim is like or reasonably related to one of the EEOC charges and can be expected to grow out of an investigation of the charges. *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996); *Harper v. Godfrey Co.*, 45 F.3d 143, 147-48 (7th Cir. 1995); *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). "This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employer some warning of the condition about which the employee is aggrieved." *Cheek*, 31 F.3d at 500; *see also Geldon v. South Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) ("The rule is meant both to give the EEOC and employer an opportunity to settle the dispute and to give the employer fair notice of the conduct about which the employee is

complaining.").

Only eight of the 154 individual Plaintiffs have filed charges of discrimination with the EEOC or comparable state agency. (Second Amended Complaint ¶¶ 19 (Cassandra Welch ("Welch") (who filed two charges of discrimination on different dates); 26 (Raynard Tyson ("Tyson")); 30 (Sheryl Taylor ("Taylor")); 32 (Courtney Davis ("Davis"), Ruby Moaney ("Moaney"), Latoya Neal ("Neal"), Calvin Stewart ("Stewart"), and Rhonda Taylor ("Taylor")). Of those eight, only Welch and Tyson received a Notice of Right to Sue[1] prior to the filing of the original Complaint in this case. The remaining 146 plaintiffs who did not file charges of discrimination assert claims based on the theory that their claims are "like or reasonably related to" the charges filed by Welch, Tyson, and the other named Plaintiffs, such that Defendant "knows what it is facing." (*Id*. ¶ 38; *see also id*. ¶ 35) ("All claims raised in this action arise from issues that would reasonably have been expected to grow from a thorough investigation of the allegations of the Welch and Tyson charges.")).

        **1.**     **Welch's and Tyson's Charges**

The starting point of the court's analysis is whether Welch and/or Tyson sufficiently preserved disparate impact claims in their EEOC charges of discrimination, as the validity of the Plaintiffs' disparate impact claims hinges on this finding.

In the context of a disparate impact claim, a plaintiff must identify in the EEOC

---

[1] Welch received her Notice of Right to Sue on January 23, 2006, and Tyson received his Notice of Right to sue on April 10, 2006. (Second Amended Complaint ¶¶ 25, 29).

charge of discrimination the neutral employment practice under challenge. This is because the gravamen of a disparate impact claim is the presence of a neutral employment practice that has a disproportionately adverse impact on a protected class. Indeed, the presence of a neutral employment practice is what separates a disparate impact claim from a disparate treatment claim. *See Raytheon v. Hernandez*, 540 U.S. 44, 52 (2003) (describing disparate impact claim as challenging a neutral employment practice that nevertheless "fall[s] more harshly on one group than another"); *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2005), *cert. denied*, 123 S.Ct. 299 (2006) (noting that a neutral employment policy is the "cornerstone" of any disparate impact investigation). Thus, courts have consistently required that an EEOC charge identify or describe the neutral employment practice which is alleged to disproportionately affect protected employees. *See, e.g., Van Jelgerhuis v. Mercury Fin. Co.*, 940 F.Supp. 1344, 1354 (S.D. Ind. 1996) (finding charges did not preserve disparate impact claim where they made "no mention of employment practices with an allegedly skewed negative effect on women"); *Remien v. EMC Corp.*, 2008 WL 821887, at *5 (N.D. Ill. March 26, 2008) (EEOC charges must provide that "a facially neutral policy or policies resulted in unintended but adverse consequences to the protected class"); *Woodman v. WWOR-TV, Inc.*, 293 F.Supp.2d 381, 390 (S.D.N.Y. 2003) (holding administrative remedies not exhausted where plaintiff's charge failed "to identify a specific, facially neutral employment practice"), *aff'd*, 411 F.3d 69 (2d Cir. 2005); *Goethe v. Cal. Dep't of Motor Vehicles*, 2008 WL 489554, at *5 (E.D. Cal. Feb. 20, 2008) ("[T]he majority of district court cases have held that

complainants' disparate impact claims were not reasonably related to properly exhausted discrimination claims," and "almost all" other cases involved charges with "facts specifically supporting the elements of disparate impact," i.e., identifying a neutral employment policy).

Welch's and Tyson's charges allege, in relevant part:

- Cassandra Welch, dated October 4, 2004: "I was discharged by Adam Hemming of human resources, Mike Roesner of human resources, Manager James Telford and Team Leader Todd Elliott.  All four were white males.  The reason for the discharge: I was accused of editing my e-mail.  I believe Respondent discriminated against me based on my race, black because:

    a.  The e-mail was personal and not business-related.
    b.  I had endured racial slurs on the job; I complained, but nothing was done.
    c.  There was also a pay disparity between blacks and whites.  Whites made more money for doing the same job.
    d.  I had good performance reviews after twelve years on the job.
    e.  I had been very vocal about racial issues on the job.

    (*See* Defendant's Ex. G).

- Raynard Tyson, dated August 25, 2004: "During the course of my employment, I began to notice a discouraging trend.  The Company would hire African Americans, but they never lasted long with the company and were 'coached out' or encouraged to resign rather than face termination . . . . [After receiving a negative performance review] I filed a grievance with Rachel Datch from Human Resources explaining that I believed actions taken were discriminatory based upon my race, African American.  I also complained that I had been with the Company for five years and had received no promotions and had not been offered the same educational and advancement opportunities as my white counterparts . . . . Based upon the foregoing, I believe Eli Lilly is discriminating against me based upon my race, African American."

    (*See* Defendant's Ex. F).

5

While it is true that the law does not require that a Title VII plaintiff specifically use the phrase "disparate impact," "there is a necessity for the EEOC charges to provide that a facially neutral policy or policies resulted in unintended but adverse consequences to the protected class." *Remien*, 2008 WL 821887, at *5. No matter how liberally read, these charges fail in that regard and, in fact, allege nothing more than disparate treatment. As such, one would not expect a disparate impact claim to "grow out of an EEOC investigation" of their charges. *Pacheco*, 448 F.3d at 791-92 (finding that disparate impact claim would not grow out of investigation of charge that alleged disparate treatment and identified no neutral employment policy); *Lett v. Reliable Ruskin*, 2005 WL 2128041, at *3 (M.D. Ala. Aug. 29, 2005) ("[I]t is not reasonable to expect the EEOC to investigate any neutral employment policy when all that is raised is intentional discrimination.") (citations, quotations, omitted).

### 2. The Scope of the Charges in Light of Other Documents

In apparent recognition of the above, Plaintiffs argue that the charges of Welch and Tyson in 2004 must be examined in light of Davis' March 31, 2006 charge, the supporting materials submitted to the EEO investigative agencies, and the demand letter submitted to counsel for Defendant. (*See* Second Amended Complaint ¶¶ 23, 24, 30). According to Plaintiffs, this additional information adds context and "puts to rest any doubt" about the scope of Welch's and Tyson's 2004 charges of discrimination. (*See* Plaintiffs' Response at 19).

### a.     Davis' Charge

Davis' charge reads, in relevant part:

- I have more medical education than most of my white peers who are sales representatives, and I have more pharmaceutical sales experience than they have, but in my six years with Eli Lilly and Company, I am underpaid compared to them . . . . Lilly has promoted less qualified white persons . . . over me . . . . Most recently, there were two Tier 2 Hospital positions available.  My supervisor denied me the opportunity to bid and hired a less qualified white person for one of the positions.  Lilly follows a pattern or practice of race discrimination in job assignments and promotions, paying its black employees at levels below white employees with the same or lower qualifications, education and experience.  I am bringing this suit on behalf of other black employees as well as to protect my own rights.

    (*See* Defendant's Ex. I).

Davis' charge, dated March 31, 2006, was filed three weeks before the Complaint in this case was filed (April 20, 2006).  Plaintiffs readily admit that the EEOC was not aware of this allegation during its investigation of Welch's and Tyson's charges.  (*See* Plaintiffs' Response at 19).  At any rate, Davis's charge does not allege a specific neutral employment policy that disproportionately affected African Americans employees, an essential element of a disparate impact claim.  She merely alleges that African American employees were not paid at the levels of their white counterparts.  Simply alleging that other employees were affected by certain decisions of Lilly supervisors is not sufficient to "broaden her administrative complaint" to include a claim for disparate impact.  *Gordon v. Peters*, 489 F.Supp.2d 729, 736 (S.D. Tex. 2007), *aff'd*, 2008 WL 162866 (5th Cir. 2008) (allegations that other individuals were treated in a discriminatory manner would

"not suffice to broaden" charge's scope to include disparate impact claim where charge did not identify a neutral employment policy); *Remien*, 2208 WL 821887, at *5 (allegations in plaintiffs' EEOC charges of "policies, patterns, and practices that were used throughout the company to the disadvantage of female employees" were insufficient to raise a disparate impact claim).

Plaintiffs' reference to *McClain v. Lufkin*, 519 F.3d 264 (5th Cir. 2008) and *Farrell v. Butler Univ.*, 421 F.3d 609 (7th Cir. 2005), do not alter the court's ruling. In *McClain*, the Fifth Circuit found that the plaintiff had exhausted his administrative remedies with respect to his disparate impact claim by alleging that he was discriminated against on the basis of his race and that "[r]espondent has similarly discriminated against other black African Americans." *Id.* at 275. However, in so finding, the Court emphasized the fact that the employer did not raise the issue in the trial court. *Id.* ("We conclude that exhaustion was sufficient. Significantly, Lufkin did not contend otherwise in the trial court."). In that same case, moreover, the Court held that another plaintiff failed to exhaust his administrative remedies because, "McClain's letter nowhere refers to any neutral employment policy of Lufkin." *Id.* at 274.

In *Farrell*, the Seventh Circuit held, with little discussion, that the plaintiff had exhausted her administrative remedies by alleging, in her charge questionnaire (apparently filed contemporaneously with her EEOC charge of discrimination):

> I believe that there is an inherent or deliberate bias against women faculty and, in this case, only two women from the entire faculty would have met the criteria for the award, yet many more men would have been eligible.

*Id.* at 616. The difference between the case at bar and *Farrell* is that in *Farrell*, the plaintiff identified in her charge questionnaire a specific criteria that when neutrally applied resulted in a disparate impact. Here, Davis did not specify a policy or other neutral criteria whose application disproportionately disadvantaged African Americans. In fact, her claim is that she did meet Lilly's employment requirements for advancement but was not chosen because of her race. The court therefore finds, for the reasons set forth above, that Davis' EEOC charge does not include a claim for disparate impact, and does not broaden the otherwise limited scope of Welch's and Tyson's EEOC charges.

### b. Paragraph 23 of the Second Amended Complaint

In further support of Plaintiffs' argument to expand the scope of their charges, Plaintiffs cite the court to paragraph 23 of the Second Amended Complaint. That paragraph alleges that on June 1, 2005, counsel for Welch served Lilly with a demand letter which stated that:

> Plaintiff would pursue class-wide claims if there was no settlement. The letter specifically noted, "[i]f we are obliged to pursue litigation in this case, we will certainly seek data to support class wide claims of disparate pay levels, disparate promotion rates, disparate job assignments and disparate disciplinary actions."

(Second Amended Complaint ¶ 23).

Welch's demand letter to defense counsel is insufficient to expand the scope of her EEOC charge, particularly where, as here, there is no evidence (at least before this court) that the EEOC ever saw this letter or expanded its investigation as a result of the

additional allegations contained in the letter. *See Sitar v. Ind. Dep't. of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (refusing to expand scope of claims beyond EEOC charge of retaliatory discharge despite knowledge of both employer and EEOC of an earlier internal complaint of sex discrimination). Without some evidence linking the demand letter to the EEOC's investigation of Welch's EEOC charge, the demand letter is of no significance.

### c. Paragraph 24 of the Second Amended Complaint

The Plaintiffs' last attempt at expanding the scope of Welch's and Tyson's charges is found in paragraph 24 of the Second Amended Complaint, which alleges that:

> During the course of the investigation, Ms. Welch and her counsel asked the Indiana Civil Rights Commission, by telephone and by letter dated July 8, 2005, to investigate the adverse impact and pattern claims on a class-wide basis by obtaining specific data regarding employees by race and pay levels.

(Second Amended Complaint ¶ 24). In Plaintiffs' First Amended Complaint, Plaintiffs characterized this conversation and letter as follows:

> During the course of the investigation, Ms. Welch and her counsel asked the Indiana Civil Rights Commission, by telephone and by letter of July 8, 2005, to investigate the equal pay claim on a class-wide basis by obtaining specific data regarding employees by race and pay levels.

(First Amended Complaint ¶ 17).

To the extent that the allegation contained within the Second Amended Complaint more appropriately describes the contents of the communications between Welch and the ICRC, the allegation's characterization of the claim as an "adverse impact" is a legal conclusion that is not entitled to deference on a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (quoting *Papasan v. Allain*, 106 S.Ct. 2932

(1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). In addition, even if Welch had asked the commission to investigate an "adverse impact" claim, there is no indication that she linked that claim to any specific policy, much less to the alleged employment policy at issue in this case. Accordingly, and given no response from Plaintiffs with respect to this particular argument, the court finds that Welch's communications to the EEOC do not save her otherwise insufficient EEOC charge.

In conclusion, the court finds that the Plaintiffs' Title VII disparate impact claims would not reasonably be expected to grow out of an investigation of the charges of discrimination filed by Welch and Tyson. To allow the Plaintiffs to go forward with their Title VII disparate impact claims – claims which were not within the ambit of Welch's and Tyson's EEOC charges – "would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Cheek*, 31 F.3d at 500. Accordingly, Plaintiffs failed to exhaust their administrative remedies with respect to their Title VII disparate impact claims and thus, those claims must be dismissed from the Plaintiffs' Second Amended Complaint.

### B. Failure to State a Claim

Even if the court were to find that Welch's and Tyson's EEOC charges properly put the EEOC on notice that they was alleging a disparate impact claim, the court's ruling dismissing Plaintiffs' disparate impact claims would still stand because Plaintiffs failed to adequately allege disparate impact claims in their lengthy Second Amended Complaint.

"A disparate impact claim exists when an employer has adopted a particular employment practice that, although neutral on its face, disproportionately and negatively impacts members of one of Title VII's protected classes." *Bennett v. Roberts*, 295 F.3d 687, 698 (7th Cir. 2002); *see also Farrell*, 421 F.3d at 616. In alleging a disparate impact claim, "it is not enough to simply allege that there is a disparate impact on workers or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson*, 125 S.Ct. 1536, 1545 (2005). Instead, the plaintiff is "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any [disparate impact]." *Id*. (internal quotations and citations omitted). The 1991 amendments to Title VII provide that a plaintiff can avoid this burden only by "demonstrat[ing] that the elements of respondent's decisionmaking process are not capable of separation for analysis." 42 U.S.C. § 2000e-2(k)(1)(B)(i). If that is shown, "the decisionmaking process may be analyzed as one practice." *Id*.

The alleged employment practice under consideration is referenced in the Second Amended Complaint as the Lilly Performance Management Process ("PM Process"). Plaintiffs describe the PM Process in their Response Brief generally as "a group of subjective practices" which have a disparate impact upon Lilly African American employees. (Response at 2). In addition, the PM Process, according to the Plaintiffs, is not capable of separation for analysis. (*Id*.; *see also* Second Amended Complaint ¶¶ 50, 90).

The allegations which pertain to the PM Process and its allegedly disparate impact

12

on Lilly African American employees comprise over 100 allegations of the Second Amended Complaint. For purposes of this motion to dismiss, the following allegations provide a flavor of the PM Process and its allegedly discriminatory impact on Lilly African American employees:

> 43. Under the Lilly Performance Management process supervisor input is the primary factor that determines an employee's ratings, his pay level and job designation, his annual pay raises, his ability to obtain desirable assignments and training, his designation as having potential for advancement, his ability to obtain positions by lateral transfer (either for purposes of career advancement or in "re-allocation" situations where employees must find new positions after their current positions are abolished) or bona fide promotion, his ability to obtain in-line career ladder promotions and most other aspects of his career development.
>
> 44. The Performance Management factors that all Lilly supervisors are directed to consider in determining an employee's performance and career path are dominated by subjective evaluations of such factors as "modeling Lilly values," "flexible thinking" and "achieving results with people."
>
> 45. Every supervisor has been trained and directed to rate employees and to award merit pay based on both the "what" of results and the subjective "how" of "modeling behaviors."
>
> 46. The Lilly Performance Management process delegates authority over employee career development to supervisors and encourages them to pick favorites for advancement based on subjective assessments which tend to be colored by racial preferences. Those preferences have resulted in a pattern and practice of race discrimination across the Lilly U.S. workforce.
>
> 47. The Lilly Performance Management process is the procedure used throughout the Lilly U.S. workforce for the selection of employees for pay raises, assignment of employees to pay levels, assignment of desirable duties and positions, lateral transfers, reallocation transfers, bona fide promotions, career ladder advancement and other career

>
> development decisions.
>
> 48. The Lilly Performance Management Process causes a disparate impact against African Americans.

(Second Amended Complaint ¶¶ 43-48).

The court is mindful of the fact that it is reviewing the sufficiency of the allegations of the Plaintiffs' Second Amended Complaint and not the merits of the Plaintiffs' claims. *United States v. Clark County, Ind.*, 113 F.Supp.2d 1286, 1290 (S.D. Ind. 2000) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990)). However, even under this lenient standard, the court is still required, pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, to determine whether Plaintiffs' allegations contained in the Second Amended Complaint give the defendant, Lilly, fair notice of Plaintiffs' disparate impact claims and the grounds upon which they rest. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (quoting *Twombly*, 127 S.Ct. at 1964) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'")); *Swierkiewicz v. Sorema N.A.*, 122 S.Ct. 992, 998 (2002); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)[.]"

*Twombly*, 127 S.Ct. at 1964-65 (internal citations omitted). *See also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) ("Taking *Erickson* and *Twombly*, together, we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.").

As shown by the allegations above, Plaintiffs contend that the PM Process governs pay raises, assignment of employees to pay levels, assignment of desirable duties and positions, lateral transfers, reallocation transfers, bona fide promotions, career ladder advancement, and other career development decisions. (Second Amended Complaint ¶ 43). This is just the tip of the iceberg. Plaintiffs also allege that the PM Process governs career plans, listings in a "talent pipeline" and other unspecified informal measures to identify employees for advancement, (*id.* ¶ 85); hiring, (*id.* ¶ 88); termination, (*id.* ¶ 120); promotion from non-exempt to exempt levels, (*id.* ¶ 89); discipline, (*id.* ¶¶ 44, 173); decisions about sales representatives' territories, staffing, sales goals, results, bonuses and recognition, (*id.* ¶ 119); the targeted selection method of interviewing candidates for vacant positions (*id.* ¶ 125); and even such non-neutral practices as retaliation (*id.* ¶ 118). Lumping all of Lilly's personnel decisions affecting virtually all Lilly employees into a single "PM Process" does not isolate the specific employment practice that is allegedly responsible for the adverse impacts expressed in the Plaintiffs' Second Amended Complaint. Plaintiffs' allegations thus fail to give Lilly fair notice of the Plaintiffs' disparate impact claims. *City of Jackson*, 125 S.Ct. at 1545 (dismissing complaint and

15

holding that plaintiffs had "done little more than point out that the pay plan at issue [was] relatively less generous to older workers than to younger workers," and had failed to identify "any specific test, requirement, or practice within the pay plan that ha[d] an adverse impact on older workers."). The fact that Plaintiffs alleged "the elements of the PM Process cannot be separated for disparate impact analysis"[2] is insufficient to revive their claims. (Second Amended Complaint ¶¶ 50, 90). Merely reciting a section of a controlling statute, like any other form of conclusory allegation, is not entitled to any weight. *Twombly*, 127 S.Ct. at 1964-65; *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 792 (7th Cir. 1996) (noting "a complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)") (quoting *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995)).

Aside from the pleading insufficiencies outlined above (and more fully outlined in Lilly's Moving Brief and Reply), the allegations of Plaintiffs' Second Amended Complaint raise disparate treatment claims, not disparate impact claims. Plaintiffs do not allege that the Lilly Performance Management process – to the extent this can be considered a neutral "policy" – was applied neutrally but had an adverse impact on

---

[2] Interestingly, the Plaintiffs seem to have retreated from their allegations that the elements of the PM Process are not capable of separation for analysis in light of their own expert's admissions that various Lilly employment processes can, in fact, be analyzed separately. (*See* Docket # 228, Defendant Eli Lilly and Company's Supplemental Brief Regarding Expert Discovery as Related to Plaintiffs' Motion to Compel, Deposition of Lance Seberhagen, Ex. WW at 75, 82-83, 86, 93, 99, 103, 123-24, 128, 135, 145, 166, 169, 190, 200; *see also* Docket # 239, Plaintiffs' Supplemental Brief in Support of Motions to Compel, Ex. 2, Supplemental Expert Report of Dr. Lance Seberhagen).

African Americans. Rather, they allege that Lilly supervisors applied the Lilly Performance Management process in a manner disadvantageous to African Americans. In other words, they allege that the supervisors in charge of their individual evaluations and other means of advancement at Lilly discriminated against them on the basis of their race. This raises a discriminatory treatment claim, not a discriminatory impact claim. *Pacheco*, 448 F.3d at 787 (stating that discriminatory treatment claims differ from discriminatory impact claims in that treatment claims, unlike impact claims, require proof of motive); *Settles v. Illinois Dep't of Human Serv.*, 42 Fed.Appx. 872, 875 (7th Cir. 2002) ("Unlike disparate treatment, which exists only when an employer intentionally discriminates, disparate impact exists when a facially neutral employment practice affects members of a protected group more harshly."); *Melendez v. Ill. Bell Tele. Co.*, 79 F.3d 661, 670 (7th Cir. 1996) ("[T]he elements of proof for disparate treatment and disparate impact claims under Title VII are significantly different. A plaintiff may demonstrate a violation of Title VII under the disparate impact theory without proving discriminatory intent."). Having so found, the court need not reach the merits of Defendant's statute of limitations argument.

For the reasons set forth above, the court must **GRANT** Defendant's Partial Motion to Dismiss (Docket # 158).

**SO ORDERED** this 18th day of March 2009.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Kyle Frederick Biesecker
BIESECKER & DUTKANYCH LLC
kfb@bdlegal.com

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

Adrienne Franco Busby
BAKER & DANIELS
afbusby@bakerd.com

Andrew Dutkanych III
BIESECKER & DUTKANYCH LLC
ad@bdlegal.com

Henry P. Gassner
ROSE & ROSE PC
hgassner@roselawyers.com

Jason P. Hopper
SEVER STOREY LLP
jason@severstorey.com

David L. Rose
ROSE & ROSE PC
daver@roselawyers.com

Joshua N. Rose
ROSE & ROSE PC
josh@roselawyers.com

Yuval Rubinstein
ROSE & ROSE P.C.
yrubinstein@roselawyers.com

Robert K. Stanley
BAKER & DANIELS
rkstanle@bakerd.com

George A. Stohner
MORGAN LEWIS & BOCKIUS
gstohner@morganlewis.com

Tonny D. Storey
SEVER-STOREY LLP
tonny@severstorey.com


Copy to:

Terri N. Marcus
ROSE & ROSE, P.C.
1320 19TH ST., N.W.
Suite 601
Washington, D.C. 20036