UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CASSANDRA WELCH, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-0641-RLY-JMS |
| | ) | |
| ELI LILLY & COMPANY, | ) | |
| Defendant. | ) | |

**ENTRY ON PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

On August 7, 2008, the court dismissed the Plaintiffs' disparate impact allegations of the First Amended Complaint brought under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e, *et seq*. ("Title VII"), because the Plaintiffs did not specifically allege a neutral employment policy that was the alleged cause of the disparate impact. On September 8, 2008, the Plaintiffs filed a 136-page Second Amended Complaint, naming 91 additional plaintiffs and adding more than 100 new allegations. Lilly moved to dismiss the disparate impact claims, and on March 18, 2009, the court granted Lilly's motion because: (1) Plaintiffs Cassandra Welch ("Welch"), Raynard Tyson ("Tyson"), and Sheryl Davis ("Davis") did not exhaust their administrative remedies, and (2) the Plaintiffs failed to state a claim upon which relief could be granted.

In response to the court's March 18, 2009 Entry, Plaintiffs Clara Walker ("Walker"), Allison Carter ("Carter"), Joy Mason ("Mason"), Lawanda Rutledge

("Rutledge"), Jackie Colbert ("Colbert"), and Delores Ryan ("Ryan") (the "New Class Representatives"), filed EEOC charges in early June 2009. These EEOC charges maintain that Lilly has discriminated against them and other African American employees in pay and promotion because of their race and that certain of Lilly's employment practices have had a disparate impact on African American employees. These EEOC charges uniformly maintain that the "excessive subjectivity of Lilly's Performance Management – Annual Review Process, has had a disproportionate negative impact on African Americans at Lilly in terms of pay and promotion." (*See* Plaintiffs' Ex. 2, the New Class Representatives' EEOC charges). New Class Representatives Walker, Carter, and Mason received their Notice of Right to Sue letters on June 30, 2009, and New Class Representatives Rutledge, Colbert, and Ryan received Notice of Right to Sue letters on July 2, 2009.

On June 8, 2009, Plaintiffs filed the present Motion for Leave to File a Third Amended Complaint. The proposed Third Amended Complaint ("TAC") attempts to cure the pleading deficiencies of the Second Amended Complaint with respect to the Plaintiffs' disparate impact claims. For the reasons set forth below, the Plaintiffs' motion is **DENIED**.

**II.    Discussion**

Lilly opposes the Plaintiffs' motion on three principle grounds: (1) the Plaintiffs fail to satisfy the good cause standard of Rule 16 of the Federal Rules of Civil Procedure; (2) the Plaintiffs' TAC suffers from the same procedural defects as the First and Second

Amended Complaint, and the Plaintiffs' efforts to cure these defects are unavailing; and (3) Plaintiffs' TAC, even under the more liberal pleading standard of Rule 15 of the Federal Rules of Civil Procedure, is futile.

### A. The Good Cause Standard of Rule 16

The first issue raised by Lilly is whether the Plaintiffs have satisfied the good cause standard of Rule 16. Rule 16 provides that a scheduling order, such as the parties' CMP, "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The good cause standard "'primarily considers the diligence of the party seeking amendment.'" *Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

The Case Management Plan ("CMP") established November 1, 2007, as the deadline for the amendment of pleadings. The present TAC was filed on June 8, 2009, some 19 months after the CMP deadline. Plaintiffs attempt to justify their belated motion to amend on four grounds.

First, Plaintiffs contend that it was not possible to add the recent allegations of discriminatory conduct prior to the November 1, 2007 deadline because the New Class Representatives did not file their EEOC charges until June 2009. Plaintiffs' contention is belied by the fact that the six new charges complain about conduct going back to or before 2003 and challenge practices that would, if actionable, continuously generate new allegations of wrongdoing.

Second, Plaintiffs contend that they reasonably believed the original charges of Welch, Tyson, and Davis preserved disparate impact claims, and that as soon as the court issued its March 18, 2009 Entry, the New Class Representatives filed their EEOC charges. However, the Plaintiffs fail to explain the 3-month delay in filing the present motion. Plaintiffs also fail to explain why they did not file EEOC charges prior to June 2009. They readily admit that they were parties to the Second Amended Complaint.

Third, Plaintiffs claim the amendment will "drastically simplif[y] the case." The court finds otherwise, as the amendment seeks to introduce a distinct cause of action on a class-wide basis.

Lastly, Plaintiffs warn that they could file a separate lawsuit against Lilly based on their newly filed EEOC charges alleging disparate impact. This is not the test of good cause, and the court will not be pressured into ignoring substantive requirements because of the threat of additional litigation. Moreover, and for the reasons set forth below, the New Class Representatives did not exhaust their administrative remedies. Thus, they are barred, in any event, from filing a separate lawsuit. For all of these reasons, the court finds that the Plaintiffs have failed to satisfy the good cause requirement of Rule 16.

### B.    Plaintiffs' Disparate Impact Claims

The second issue raised by Lilly is whether the disparate impact allegations of the TAC have been administratively exhausted and, if so, whether they state a claim upon which relief can be granted. As an aid to the reader, the court will begin its discussion with a brief review of its March 18, 2009 Entry and address the propriety of the

allegations contained within the TAC dealing with administrative exhaustion (some of which are remarkably similar to those asserted in the Second Amended Complaint). Next, the court will address whether the New Class Representatives can "piggyback" their EEOC charges on those of Welch, Tyson, and Davis. Lastly, the court will address whether the New Class Representatives exhausted their administrative remedies with respect to their asserted disparate impact claims, and whether the TAC's disparate impact allegations state a claim upon which relief can be granted.

### 1. The Court's Prior Ruling

In the court's March 18, 2009 Entry, the court identified as the "starting point of [its] analysis . . . whether Welch and/or Tyson sufficiently preserved disparate impact claims in their EEOC charges of discrimination, as the validity of the Plaintiffs' disparate impact claims hinges on this finding." (Entry on Defendant's Partial Motion to Dismiss, "March 18, 2009 Entry" at 3). The court then thoroughly examined those charges (as well as Welch's post-charge conduct) to determine whether either named Plaintiff preserved a disparate impact claim. The court concluded that they did not: "[n]o matter how liberally read, these charges . . . allege nothing more than disparate treatment." (*Id*. at 6).

In the Plaintiffs' TAC, Plaintiffs once again allege exhaustion based on Welch and Tyson's EEOC charges and Welch's post-charge conduct. The TAC alleges:

> The EEOC charges of Plaintiffs Tyson and Welch and the ensuing investigation and efforts at conciliation gave notice to the EEOC and to Defendant that Plaintiffs Tyson and Welch charged Defendant with

>engaging in systemic discrimination against African-American employees. All claims raised in this action arise from issues that would reasonably have been expected to grow from a thorough investigation of the allegations of the Welch and Tyson charges.

(TAC ¶ 22; *cf.* Second Amended Complaint ¶ 35 (asserting identical allegations)).

Similarly, in the court's March 18, 2009 Entry, the court rejected the claim that an administrative charge filed by Plaintiff Sheryl Davis preserved a disparate impact claim. (March 18, 2009 Entry at 7-9). The court held that "Davis's charge does not allege a specific neutral employment policy that disproportionately affected African American employees, an essential element of a disparate impact claim." (*Id*. at 7). In the proposed TAC, Plaintiffs ignore this ruling as well: "To the extent that the Welch and Tyson Charges did not provide adequate exhaustion of the EEOC Charge filing requirements of Title VII for all issues raised in this action, the Charges filed by Davis and other plaintiffs fully exhausted" those requirements. (TAC ¶ 23; *cf*. Second Amended Complaint ¶ 37). Thus, the Plaintiffs have re-plead[1] the precise allegations rejected by this court in the March 18, 2009 Entry.

---

[1] In the Plaintiffs' Reply Brief, the Plaintiffs contend that they cited the charges of Welch, Tyson, and Davis "as support for the notion that, until the Court made its March 18, 2009 ruling, it was reasonable for other African-American Lilly employees to believe that the administrative requirements for the disparate impact claims for the class had already been exhausted." (Plaintiffs' Reply at 3). A plain reading of paragraphs 22 and 23 of the TAC belie the Plaintiffs' assertion. Moreover, Plaintiffs' assertion makes no sense. In the March 18, 2009 Entry, the court specifically found that the EEOC charges of Welch, Tyson, and Davis were not exhausted with respect to claims for disparate impact, and the Plaintiffs did not challenge that ruling. Are the Plaintiffs now contending that they did not mean what they said in the TAC? Further, either the Plaintiffs' EEOC charges were exhausted or they were not. There is no "reasonable belief" exception to the exhaustion requirement.

### 2. Piggybacking

Undeterred by the court's prior ruling, the Plaintiffs once again seek to revive their twice-dismissed disparate impact claims through the EEOC charges of the New Class Representatives. Recognizing the obvious timing issues presented by the New Class Representatives' EEOC charges (i.e., the 300-day rule), the Plaintiffs maintain that they can "piggyback" the New Class Representatives' EEOC charges on the admittedly "unexhausted" charges of Welch, Tyson, and Davis, and thereby extend the class period for the New Class Representatives to the earliest filed EEOC charge (Tyson). (Plaintiffs' Reply at 4); *see also* TAC ¶ 25).

The "single-filing" or "piggybacking" doctrine is a judge-made exception to the Title VII exhaustion requirement. *Horton v. Jackson County Board of County Comm'rs*, 343 F.3d 897, 899 (7th Cir. 2003). It provides that: if "the would-be intervenor's claim arises out of the same or similar discriminatory conduct, committed in the same period, as the claim in the suit in which he wants to intervene, his failure to file a timely charge will be disregarded." *Id.* Although the exhaustion requirement serves the dual purpose of notice to the employer and an opportunity to settle the dispute, this purpose is served, it is argued, if at least one plaintiff files a timely EEOC charge. *Id.* The doctrine is typically utilized in class actions, thereby allowing members of the class who did not file EEOC charges to join the lawsuit. *Id.* at 900 ("Requiring that every class member file a separate charge might drown agency and employer alike by touching off a multitude of fruitless negotiations."). To fall within this exception, the would-be intervenor must establish that:

(1) the party who filed the action for discrimination exhausted his administrative remedies and noted the collective or class-wide nature of the claim in his EEOC charge of discrimination; (2) the would-be intervenor did not file a timely EEOC charge; and (3) the would-be intervenor suffered the same or similar discriminatory conduct during the same period as the party who filed the lawsuit he seeks to join.  *Id*.; *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1016-17 (7th Cir. 1988) (finding that employees subject to same discriminatory practice were not required to file timely charges with the EEOC so long as similarly situated employees filed allegations of class-wide discrimination); *Price v. Choctaw Glove & Safety Co., Inc.*, 459 F.3d 595, 599 (5th Cir. 2006) (finding that a party invoking the single filing rule must establish that: the plaintiff is similarly situated to the person who filed the EEOC charge; the charge provided some notice of the collective or class-action nature of the charge; and the individual who filed the EEOC charge filed a suit that the piggybacking plaintiff may join); *Green v. City of Boston*, 204 F.Supp.2d 239, 241 (D. Mass. 2002) (finding that "similarly situated plaintiffs, who have failed to file administrative charges, or who have filed untimely charges, are permitted to piggyback on a timely-filed charge that gives the EEOC and the employer fair notice of allegations of class-wide discrimination."); *but see Murphy v. PricewaterhouseCoopers, LLC*, 580 F.Supp.2d 16, 24 n.20 (D.D.C. 2008) ("A claimant may not rely on another individual's perfected charge if he or she has previously filed a charge related to the litigation.").

      Plaintiffs contend that "this kind of piggybacking" has been allowed where the

"original class representatives' claims have been found to be deficient." (Plaintiffs' Reply at 4). The Plaintiffs' "kind of piggybacking" is not piggybacking at all. Indeed, the slew of cases cited by the Plaintiffs in their Reply Brief are inapplicable to the facts of this case. (*See id*. at 4-6). Plaintiffs' cases specifically address the substitution of class representatives in relation to statutes of limitations – an entirely different problem from lack of administrative exhaustion. Moreover, Plaintiffs' lead case, *McKowan Lowe & Co., Ltd. v. Jasmine, Ltd.*, 295 F.3d 380 (3d Cir. 2002), deals with securities law, and, in any event, none of the cases Plaintiffs cite even mention exhaustion, much less apply the exhaustion-specific "piggybacking" doctrine.

Analyzing the case under appropriate case law requires a contrary finding than the Plaintiffs advocate. The New Class Representatives complain of a type of discrimination (disparate impact) that is wholly distinct from the type of discrimination alleged in the EEOC charges of Welch, Tyson, and Davis (disparate treatment). Thus, "one would not expect a disparate impact claim to 'grow out of an EEOC investigation' of their charges." (March 18, 2009 Entry at 6 (citing *Pacheco v. Mineta*, 448 F.3d 783, 791-92 (5th Cir. 2006) (finding that disparate impact claim would not grow out of investigation of charge that alleged disparate treatment and identified no neutral employment policy)). To allow the New Class Representatives to piggyback onto the claims of Welch, Tyson, and Davis "would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charge party of notice of the charge." (*Id*. at 11 (citing *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)); *see also Horton*, 343 F.3d at 901 ("Unless the

9

single-filing doctrine is limited to cases in which the claims arise from the same facts rather than merely from facts that resemble each other or are causally linked to each other, courts will perforce be excusing the filing of a timely charge in *every* case in which an employee alleges retaliation for supporting another employee's charge. Such a rule would undermine the EEOC's conciliation procedure for no good reason."). Thus, there is no perfected disparate impact charge that the New Class Representatives may latch onto. Accordingly, the New Class Representatives may not piggyback onto the charges of Welch, Tyson, and Davis.

### 3. The New Class Representatives' Charges

As an interesting twist to this case, the New Class Representatives received Notices of Right to Sue letters on June 30 and July 2, 2009, respectively, just days after Lilly filed its Response Brief but before the Plaintiffs filed their Reply Brief. Technically speaking, the New Class Representatives have exhausted their administrative remedies for events before April 2008. The next issue the court must address, then, is whether these EEOC charges sufficiently allege disparate impact.

The New Class Representatives' EEOC charges are in evidence as Plaintiffs' Exhibit 2. Two observations are worthy of note. First, the charges allege identical boilerplate allegations of excessive subjectivity. Second, the charges appear to be drafted by their attorneys. (Lilly represents that one of the New Class Representatives, Lawanda Rutledge, testified in her deposition that she did not recognize her own charge). As such, the typical rule of applying a liberal construction to a plaintiff's EEOC charges is

inapplicable. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546 (6th Cir. 1991) ("Liberal construction is not necessary where the claimant is aided by counsel in preparing his charge.").

But even with the benefit of counsels' involvement, the New Class Representatives' EEOC charges are inadequate to preserve class-wide disparate impact claims. The allegations pertinent to this issue are found in paragraph 2 of each charge, and read as follows:

> The excessive subjectivity of Lilly's Performance Management – Annual Review Process, has had a disproportionate negative impact on African Americans at Lilly in terms of pay and promotion. Specifically, the annual ratings govern pay raises and the ability to obtain in-line and other promotions. Predominantly white Lilly supervisors have unfettered discretion to rate employees on the reviews; these ratings dictate employee compensation and promotions. As a result, this policy, even though not racist on its face, has a disparate impact on African Americans in pay and promotion opportunities, and has caused them to be historically considered second class employees at the Company.

These allegations, like those alleged in the Second Amended Complaint, fail to identify a neutral employment practice. (*See* March 18, 2009 Entry at 14-16) (rejecting attempt to sweep a wide variety of decisions under the umbrella of subjective practices as stating disparate impact claim). Moreover, even if sufficiently specific to challenge some practices, these charges would not challenge (and thus could not preserve claims arising from) the tens if not hundreds of different kinds of pay and promotion decisions that are encompassed within the proposed TAC. Thus, they are inadequate to preserve class-wide disparate impact claims.

As a final note, the timing of these New Class Representatives' charges warrants discussion. The Plaintiffs filed the present motion for leave to file the TAC on June 8, 2009, just one business day after the last EEOC charge was submitted, and moved for class certification, based on the newly-filed TAC (as opposed to present Second Amended Complaint), on June 9, 2009. These facts suggest that the Plaintiffs had no intention of engaging in the administrative process. Rather, Plaintiffs have acted to "circumvent the purpose of securing voluntary compliance with the mandates of Title VII." *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 129 (7th Cir. 1989) (affirming dismissal of class action where plaintiffs filed suit just five days after submitting their EEOC charges and thus were attempting to "bypass the administrative process"). For all of the reasons set forth above, the court finds the New Class Representatives did not exhaust their administrative remedies with respect to their Title VII disparate impact allegations.

### 4.     The Pay and Promotion Allegations of the TAC

The Plaintiffs distinguish the TAC from the First and Second Amended Complaints by arguing that "the TAC is very narrowly tailored in identifying a racially neutral employment practice leading to a disparate impact on African-American employees." Specifically, they allege that the TAC identifies, as its neutral employment practice, "the performance evaluation process whereby Lilly employees are evaluated four times a year, culminating in an annual review based on the reviews from all four quarters." (TAC ¶ 47). They further allege that "the subjectivity inherent in Lilly

managers' decisions, as well as the subjectivity inherent in Lilly's performance evaluation process upon which management relies, yields disparity for African-American employees in pay and promotion." (*Id*. ¶ 48). A closer look at the allegations of the putative class members reveals the inaccuracy of these claims. Indeed, the allegations of the putative class representatives reveal the wide variety of pay and promotion-related issues that fall within the general categories of "pay" or "promotion." For example, the TAC contains individual complaints regarding initial placement and title (*id.* ¶ 71); initial base salary (*id*. ¶ 83), lateral transfers (*id*. ¶ 86), the posting policy and minimum time in grade (*id*. ¶ 87), failure to promote despite excellent ratings (*id*. ¶ 101), failure to support for promotion (*id*. ¶ 102), non-selection for Succession Management (*id*. ¶ 103), degree requirements for specific promotions (*id*. ¶ 116), non-support for bona-fide promotions (*id*. ¶ 117), failure of ratings to match performance (*id*. ¶ 123), job classification (*id*. ¶ 143), misinformation regarding salary upon transfer (*id*. ¶ 164), cost-of-living adjustments (*id*. ¶ 167), and unequal grooming (*id*. ¶ 182). The TAC even raises allegations outside of pay and promotion, including an individual allegation of retaliation (*id*. ¶ 149) and hostile work environment (*id*. ¶ 156).

In the March 18, 2009 Entry, the court found that such "lumping" of myriad employment decisions into a single employment process fails to isolate the specific practice allegedly responsible for the adverse impact. The same reasoning applies here. Although the TAC attempts to address only pay and promotion policies, it still sweeps a wide variety of decisions under the umbrella of subjective practices. The fact remains

that the Plaintiffs' TAC alleges disparate treatment and nothing more. (*See* Entry on Defendant's Motion to Dismiss Certain Claims in Amended Class Action Complaint at 16 (holding "these allegations suggest a disparate treatment claim – i.e., that they were treated differently than those outside of their protected class because of their race"); March 18, 2009 Entry at 17 (Plaintiffs "allege that the supervisors in charge of their individual evaluations and other means of advancement at Lilly discriminated against them on the basis of their race. This raises a discriminatory treatment claim, not a discriminatory impact claim.")).

### C. Futility Under Rule 15

The final issue raised by Lilly is whether the Plaintiffs have satisfied the liberal requirements of Rule 15. Rule 15 provides that leave to amend a complaint should be freely granted when justice so requires; however, a "district court need not allow an amendment when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co., Inc. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001).

The Plaintiffs move for leave for three main reasons: "(1) to correct deficiencies; (2) to simplify the claims against Defendant; and (3) to drop a request for compensatory and punitive damages in the prayer for relief." (Plaintiffs' Moving Brief at 4-5). As argued by Lilly, allowing the Plaintiffs to file the TAC would be futile. As stated in this Entry and in the court's previous ruling, the Plaintiffs have not exhausted their administrative remedies with respect to their disparate impact claims because their EEOC

charges fail to identify a neural employment practice. The TAC fails for the same reasons. Indeed, the TAC still alleges the lack of a policy – the theory that subjective decisions and manager discretion allow individual bias to harm African-American employees. (*See, e.g.*, TAC ¶ 46 ("Promotion opportunities are driven by personal familiarity, subjective decision-making, pre-selection, and interaction between white executives, managers, supervisors, and subordinates, rather than by merit or equality of opportunity.")). For these reasons, and for the additional reasons cited by Lilly, the court finds that Plaintiffs have not satisfied liberal amendment requirements of Rule 15.

### III.    Conclusion

The Plaintiffs have not shown that they are entitled to file a proposed Third Amended Complaint. Accordingly, the Plaintiffs' Motion for Leave to File Third Amended Complaint (Docket # 309) is **DENIED**.

**SO ORDERED** this 11th day of August 2009.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

Robert Thomas Dassow
HOVDE DASSOW & DEETS LLC
rdassow@hovdelaw.com

Christine Dunn
SANFORD WITTELS & HEISLER, LLP
cdunn@nydclaw.com

Krissy A. Katzenstein
BAKER & DANIELS - Indianapolis
krissy.katzenstein@bakerd.com

Martha M. McBrayer
MORELLI RATNER, PC
mmcbrayer@morellilaw.com

Benedict P. Morelli
MORELLI RATNER, PC
bmorelli@morellilaw.com

D. Lucetta Pope
BAKER & DANIELS-SOUTH BEND
lucetta.pope@bakerd.com

David S. Ratner
MORELLI RATNER, PC
dratner@morellilaw.com

David L. Rose
ROSE & ROSE PC
daver@roselawyers.com

Joshua N. Rose
ROSE & ROSE PC
josh@roselawyers.com

Yuval Rubinstein
ROSE & ROSE P.C.
yrubinstein@roselawyers.com

David Weissbord Sanford
SANFORD WITTELS & HEISLER LLP
dsanford@nydclaw.com

Robert K. Stanley
BAKER & DANIELS - Indianapolis
rkstanle@bakerd.com

George A. Stohner
MORGAN LEWIS & BOCKIUS
gstohner@morganlewis.com


Copy to:

Stephanie Roemer
SANFORD, WITTELS & HEISLER, LLP
1666 Connecticut Avenue, N.W.
Suite 310
Washington, DC 20009

Felicia Medina
SANFORD WITTELS & HEISLER, LLP
1666 Connecticut Ave., N.W. Suite 310
Washington, DC 20009

17